*2nd Amended claim 07 14 2021*

| | | |
|---|---|---|
| Your Name: | Austin Adjaye | |
| Address: | 3748 Rolling Hills CT Pittsburg CA 94565 | |
| Phone Number: | (925) 872-3247 | |
| Fax Number: | (925) 439-2627 | |
| E-mail Address: | AustinAdjaye@gmail.com | |

Pro Se Plaintiff

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Austin Adjaye | Case Number   *2:20-cv-08940-JGB-E* |
| Plaintiff, | **CIVIL COMPLAINT** |
| vs. | |
| Jonathan White | |
| Los Angeles County Sheriff Department | DEMAND FOR JURY TRIAL |
| County of Los Angeles | Yes ☒   No ☐ |
| Defendant. | |

CIVIL COMPLAINT
PAGE **1** OF **42**

1

2

**PARTIES**

**1. Plaintiff.**

3

4

Name:     **Austin Adjaye**

5

Address:   3748 Rolling Hills CT Pittsburg, CA 94565

6

Telephone:  (925) 872-3247

7

**2. Defendants.**

8

**Defendant 1**:

9

Name:     **Jonathan White**

10

Address:   11703 Alameda St, Lynwood, CA 90262

11

Telephone:  (323) 568-4800

12

**Defendant 2:**

13

Name:     **Los Angeles County Sheriff Department**

14

Address:   4900 S Eastern Ave, #102  Commerce, CA 90040

15

Telephone:  (323) 267-4800

16

**Defendant 3:**

17

Name:     **County of Los Angeles**

18

Address:   500 West Temple St, Room 383 Los Angeles, CA 90012

19

Telephone:  (213) 974-1440

20

21

**JURISDICTION**

22

3.  My case belongs in federal court

☒  under federal question jurisdiction because it is involves a federal law or right.

23

[*Which federal law or right is involved?*]

24

25

**VIOLATION OF FOURTH AMENDMENT _42 U.S.C. § 1983  (false imprisonment, extortion, illegal seizure, harassment) VIOLATION OF FIRST AMENDMENT _42 U.S.C. § 1983 (Free Speech, freedom of expression, freedom to protest)**

26

27

28

CIVIL COMPLAINT

PAGE  **2**   OF  **42**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VENUE**

4.      Because this lawsuit arose in **Los Angeles County**, it should be assigned to **Western Division** of this Court.

**Second Amended Claim**

**This is the 2nd amended claim after the Defendant's Motion to Dismiss failed. During the Opposition to Dismiss, Mr. Adjaye provided more evidence using LASD policies which he utilizes in this 2nd Amended claim  (*LASD Manual_of_Policy_and_Procedures___3-01_080.16_-_Photography,__Audio,_and_Videotaping_by_the_Public_and_the_Press*). Mr. Adjaye is in the realm of the street preacher and open air preaching subculture and shares his displeasures openly which he did at across the street of Lynwood women's jail for 1 hour, and outside LASD STAR Academy in Whittier, CA for 90 minutes 3 hours earlier. Mr. Adjaye brings research and evidence to the table and going to make it clear again, Mr. Adjaye was only in Los Angeles for one reason, to preach the Word of the Heavenly Father which he did outside the STAR Academy in Whittier, across the street of the Lynwood women's jail on Mona Blvd, Hollywood Blvd, outside two strip clubs in Downtown Los Angeles and Rialto (Déjà vu Afterhours and Spearmint Rhinos), and more preaching in Las Vegas several hours later.**

**STATEMENT OF FACTS**

 __1__ . Mr. Austin Adjaye is a street preacher and videographer who resides in Pittsburg, CA.

 __2__ . On August 23, 2019 3:00 PM PST, Mr. Adjaye was walking along Mona Blvd in Lynwood CA directly across the street of the Lynwood Women's Regional jail.

1

2      __3__. Mr. Adjaye carries a large double-sided "JESUS CHRIST SAVES" "REPENT OR

3    PERISH" sign, black Jansport backpack, black voice booster amplified portable speaker, black

4    wireless microphone, brown KJV bible, and a small camcorder mounted on a monopod tripod.

5

*Mr. Adjaye's Professional street preaching equipment used on 08 23 2019*



*The large two sided sign leaned on the grey wall off the easement*



22      __4__. Mr. Adjaye was standing on the sidewalk between E117 and E Imperial of Mona

23   Blvd near the Glenn Anderson 105 freeway in the direction of the women's prison entrance/exit

24   area across the street. Mr. Adjaye made himself visible and did nothing to conceal his actions.

25   Anyone on Mona Blvd between E117 and E Imperial can see Mr. Adjaye had professional street

26   preaching equipment and camcorders. Mr. Adjaye leaned the large "JESUS CHRIST SAVES"

27

28   sign on the wall in the picture.

CIVIL COMPLAINT
PAGE  __4__  OF  __42__

*Left photo: Spot Mr. Adjaye was standing   Right photo: The direction of the women's prison*



*The Google earth map of Mona Blvd E117 and E Imperial near 105 Freeway*



__5__.Mr. Adjaye started to film B roll footage standing on Mona Blvd with a Samsung Galaxy S6 in one hand and a JBL clip 3 portable Bluetooth speaker in the other hand playing

CIVIL COMPLAINT
PAGE __5__ OF __42__

religious audio sermons. The audio is from a Hebrew Israelite camp (**Greatmillstone**) from the

San Francisco Bay Area **GMSSFBAYCA7BA** you can find on their YouTube channel.

*Video recording equipment and Bluetooth portable speaker to play audio while recording B roll footage*





*Mr. Adjaye's 1st set of B roll footage while playing GMS Hebrew Israelites audio in background*

  **6**  . After the recording of the first set of B roll footage, Mr. Adjaye sets up his Aker

38 Voice Booster Amplified speaker, grabbed his wireless microphone, screwed the mini blue

camcorder on the monopod tripod to prepare to do a sermon. Mr. Adjaye's style of preaching is

to preach "person's point of view" in his video recordings. In the photos, the camcorders are

pointed in the direction of the jail because that's his style of preaching.

  **7**  . Around 3:30 PM, Mr. Adjaye video records "20 minute sermon" of him holding a

camcorder mounted on a monopod tripod with a wireless microphone in the other hand speaking

at 82 decibels through a Voice Booster Aker 38 amplified speaker. During the 20 minute

CIVIL COMPLAINT
PAGE **6** OF **42**

sermon, Mr. Adjaye shares his displeasures of the Los Angeles County Sheriff Department, his interactions with Deputies outside the STAR Academy in Whittier, CA earlier in the day, and the recent investigations of the Lynwood women's prison. Mr. Adjaye also shares his intentions to do more preaching in Los Angeles later that night and in Las Vegas the next day.

*A still image from Mr. Adjaye's "20 minute sermon" 15 minutes prior to the Deputy White incident*



  **8**  . Mr. Adjaye puts the wireless microphone, monopod tripod, and Voice Booster Aker 38 to the side in the dirtied area of the sidewalk area (off the easement) and started to record more B roll footage now playing Bay Area San Francisco hip hop music through the JBL clip 3 portable Bluetooth speaker (**IamSu -100 Grand, Clyde Carson - Let's Get It, Clyde Carson - Slow down**).

*Still image of Mr. Adjaye resuming B roll footage after "20 minute sermon"*



  **9**  . After 4 minutes and 11 seconds of B roll footage playing Bay Area Hip Hop music, Mr. Adjaye see's two Deputies at the entrance/exit gate talking as if they're planning to make contact with Mr. Adjaye (in the photo, Deputy White is in the Crown Vic). Mr. Adjaye continues to video record and plays French Hip Hop artist **S Pri Noir - Skywalker** through the JBL Clip 3 portable Bluetooth speaker.

*Deputy White assigning Deputies to make contact with Mr.Adjaye*



CIVIL COMPLAINT
PAGE **8** OF **42**

1

2

**10** . Deputy White makes a turn on Mona Blvd and performs a U turn to make contact with

3

Mr. Adjaye. He has other Deputies arrive in their patrol vehicles to assist him.

4

5

6

7

8

9

10

11

12



13

*Deputy Jonathan White about to make the U Turn on Mona Blvd to make contact with Mr. Adjaye*

14

**11** . Corporal Jonathan White under his authority as a two striped Senior

15

Deputy/training officer assigns 4 other Deputies to make contact with Mr. Adjaye surrounding

16

17

him (3 Hispanics, 1 White).

18

**12** . The first Deputy asks Mr. Adjaye why he's recording from across the street of the

19

women's jail. Mr. Adjaye answers "I'm street preaching and recording B roll footage between

20

21

sermons. 148.G of the CA Penal code says I can record public officials in the full capacity of

22

their duties on a public sidewalk".

23

24

*148 (g) The fact that a person takes a photograph or makes an audio or video recording of*

25

*a public officer or peace officer, while the officer is in a public place or the person taking*

26

*the photograph or making the recording is in a place he or she has the right to be, does not*

27

*constitute, in and of itself, a violation of subdivision (a), nor does it constitute reasonable*

28

*suspicion to detain the person or probable cause to arrest the person.*

CIVIL COMPLAINT
PAGE **9** OF **42**

**13** . Deputy White asks Mr. Adjaye for his Driver's license and Mr. Adjaye says "No".

**14** . Deputy White now asks Mr. Adjaye what's with the camera equipment because he thinks there is an ulterior motive for a person standing across the street of a women's jail just to street preach.

**15** . Deputy White mentions a sniper incident 2 days ago at the Lancaster Sheriff station (83 miles North of Lynwood, CA in Antelope Valley) on Wednesday August 21, 2019 where a Deputy was allegedly shot in a gated parking lot.

*Alleged sniper incident Wednesday afternoon August 21, 2019 Lancaster Sheriff station*



**16** .Mr. Adjaye responds their feelings don't trump his rights meaning that Mr. Adjaye's intention is preach and these 5 Deputies are stopping his work in the first day of his Los Angeles/Las Vegas Christian Excursion.

**17** .Deputy White tells Mr. Adjaye to look at the situation in his shoes because it's highly suspicious according to him that Mr. Adjaye was standing across the street with camera equipment for over an hour recording a women's jail in his opinion.

CIVIL COMPLAINT
PAGE **10** OF **42**

1

2   **18** .Mr. Adjaye responded he participated in two ride alongs with the Sacramento

3   police department on Friday, April 26, 2019 and the Ventura County Sheriff department Friday,

4   May 3, 2019 (Mr. Adjaye participated in two ride alongs based on his displeasures with police

5
    and a recent interaction with a police agency in his hometown of Pittsburg, CA back in April of

6
7   2019)

8   **19** .Deputy White responds "why aren't you on our side". Mr. Adjaye's response is "I

9
    like preaching the word better" (Mr. Adjaye was outside the LASD STAR Academy in Whittier,

10
11  CA preaching an hour prior to him arriving to Lynwood, CA to do more preaching rebuking the

12  Los Angeles County Sheriff Department with the word of the Heavenly Father).

13

14  *A clip of a sermon Mr. Adjaye did outside LASD STAR Academy Whittier, CA earlier in the day*

15  

16

17

18

19

20

21

22

23

24

25

26  **20** .Deputy White asks Mr. Adjaye if he can review the footage of the sermon taped

27
    from the camcorder mounted on a tripod.

28

CIVIL COMPLAINT
PAGE **11** OF **42**

**21** .Mr. Adjaye said "the camcorder doesn't have a playback feature directly built in" *It's Mr. Adjaye's way of saying he's not showing the Deputies his video footage and asserting his 4th and 5th Amendment rights in this encounter.*

**22** .Deputy White says " you'll share all of that but you refuse to give me your name, you're not being honest and you're hiding something, I'm not asking you, I'm telling you, I need your ID"!!!

**23** .Mr. Adjaye says "I'll give you my first name but I'm not giving you anything else because 148.G of the California penal code says I don't have to ID if I didn't break the law".

***Mr. Adjaye invoking his 4th and 5th Amendment rights not identifying***

*According to the **LASD Manual_of_Policy_and_Procedures___5-09_520.15_-_Consensual_Encounters** Mr. Adjaye doesn't have to answer questions and **invoke his 4th and 5th Amendment right at any time**. Mr. Adjaye multiple times reminding the Deputy he's doing something illegal since he had an idea this was going to turn into an illegal detention based on the hostility of the Deputy, his line of questions start to be demands, and because Mr. Adjaye is across the street of a women's jail with "Professional street preaching equipment"*

*LASD Manual of Policy and Procedures 5-09/520.15 Consensual Encounters*

Manual of Policy and Procedures : 5-09/520.15 - Consensual Encounters

**5-09/520.15 - Consensual Encounters**

Persons that are contacted during consensual-encounters shall be free to leave at all times and the contact shall be voluntary. A consensual encounter can transform into a detention if a reasonable person believes that they are not free to leave.

Printed: 5/19/2021 (WEB)          Los Angeles County Sheriff's Department          Pg. 1 / 1

*"Nothing in policy of the Los Angeles County Sheriff Department bars Deputies from initiating a consensual encounter with a person taking PHOTOGRAPHS OR RECORDING VIDEO. However, a person's refusal to answer questions or to speak with officers during a consensual encounter **DOES NOT PROVIDE A BASIS FOR A DETENTION OR SEARCH"***

**At no time, Mr. Adjaye gave Deputy White consent to search him, to review his video camcorder footage, or voluntarily hand over his ID and he could run him for warrants.**

   **24** .Deputy White now retaliates because Mr. Adjaye has asserted/invoked his 1st, 4th and 5th Amendment rights and knows a lot about the laws

   **25** . Deputy Jonathan White looks Mr. Adjaye's professional street preaching equipment  (PA speaker, microphone, KJV bible, water bottle, black backpack and picket sign

CIVIL COMPLAINT
PAGE  **13**  OF  **42**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

leaned on the wall saying "Jesus Christ saves" "Repent or Perish" double-sided sign mounted on a large stick (street preaching equipment) sorted together in the dirt area off the sidewalk and says "now I'm detaining you, that's litter (Deputy White claims Mr. Adjaye's professional street preacher equipment is garbage left on the sidewalk)".

*Mr.Adjaye's professional street preaching equipment Reenactment photos taken Saturday January 16, 2021*



  **26** .Mr. Adjaye demands for a supervisor; and one of the 4 other deputies said "Senior Deputy/Corporal White is the supervisor at the scene".

  **27** .Mr. Adjaye firmly asks for a Lieutenant or Sergeant. Deputy White threatens to cite Mr. Adjaye because his demands in this "illegal detainment" .

CIVIL COMPLAINT
PAGE **14** OF **42**

*Retaliatory detainment because in **LASD Manual of Policy and Procedures 3-01 080.16 Photography, Audio, and Videotaping by the Public and the Press**, video recording Deputy Sheriff's and other LASD personnel is a lawful activity in the public.*

**28**. Deputy White's tells Mr. Adjaye that if he gets a Sergeant to the scene, he has no choice but to give him a "littering citation" for leaving "garbage" on the ground **(Professional street preaching equipment in the dirtied area, NOT ON THE SIDEWALK)**.

A violation of the ***Tom Bane Act of California*** and ***LASD Manual of Policy and Procedures 3-01 080.16 Photography, Audio, and Videotaping by the Public and the Press***

*The exact spot and setup of Mr. Adjaye's professional street preaching (Reenachment photo) equipment Deputy White claimed what was "Garbage"/ "Litter" and a citable offence giving Deputy White Probable cause to Detain and Identify Mr. Adjaye. This is PURELY A RETALIATORY DETENTION.*



CIVIL COMPLAINT
PAGE **15** OF **42**



*14-07 - Citizens Taking Pictures/Video In Public Places  LASD NEWSLETTER*

*2014 memo on civilians taking photos/video recordings in public areas*

**29** .Mr. Adjaye pulls out his driver's license and tells Deputy White he's only handing out his ID "out of duress" (Mr. Adjaye documenting this encounter). Mr. Adjaye tells the Deputies this is an "Illegal" detainment because of Mr. Adjaye refusal to identify because he was video recording the Lynwood women's jail from across the street (Mr. Adjaye's intention was to preach the word of the Heavenly Father which he had intentions on Hollywood Blvd, outside the Deja Vu Afterhours Gentlemen's club in Downtown Los Angeles, and Spearmint Rhinos Gentlemen's club in Rialto, CA).

*Mr. Adjaye knew the consequences if he disobeyed a lawful order* (**failure to comply to a lawful order**)*, it will cut his Los Angeles/Las Vegas Christian Excursion short*

**30** . Mr. Adjaye continues to argue that the Deputies are in the wrong telling them he's being illegally detained and him relinquishing his identification for a retaliatory search is an illegal search and seizure

CIVIL COMPLAINT
PAGE **17** OF **42**

**LASD Manual of Policy and Procedures 3-01/080.16 Photography, Audio, and Videotaping by the Pubic and the Press**

Manual of Policy and Procedures : 3-01/080.16 - Photography, Audio, and Videotaping by the Public and the Press

**3-01/080.16 - Photography, Audio, and Videotaping by the Public and the Press**

Members of the public, including the press, have a First Amendment right to observe, take photographs, and record video or audio in any public place where they are lawfully present.

Photography and the recording of video or audio are common activities and are neither crimes nor indications of criminal activity in and of themselves. Neither photography nor the recording of video or audio, standing alone, can form the basis for a detention, arrest, or warrantless search.

Members of the public have the same right to take photographs and record video and audio as members of the press (except for some circumstances authorizing press access to areas closed to the public pursuant to Penal Code section 409.5 due to the existence of a menace to public health or safety created by a calamity including a flood, storm, fire, earthquake, explosion, accident, or other disaster).

Members of the public have the right to take photographs and record video and audio of peace officers engaged in the public discharge of their duties, including in such activities as detentions, searches, and arrests as long as the members of the public are in a place in which they have a legal right to be present.

The types of places in which an individual has a right to be present include public streets and sidewalks, an individual's home or business, and any other public or private facility at which the individual is lawfully present.

Department personnel should assume they are being recorded at all times while on duty.

**Interference with Recording Police Activities**

Department members are prohibited from interfering with, threatening, intimidating, blocking, or otherwise discouraging a member of the public, who is not violating any other law, from taking photographs or recording video or audio (including photographs, video, or audio of police activities) in any place in which the members of the public is lawfully present. Such prohibited interference includes:

- Ordering a person to cease taking photographs or recording video or audio; however, in sensitive situations involving injured persons or victims, deputies may ask a person to stop recording voluntarily, provided the deputy explains that the person has the right to record;
- Demanding that person's identification;
- Demanding that the person state a reason why he or she is taking photographs or recording video or audio;
- Detaining that person;
- Intentionally blocking or obstructing cameras or recording devices (not including physical barricades or screens used as part of a tactical operation or crime scene);
- Seizing and/or searching a cell phone, camera or recording device without a warrant;
- Using force upon that person; or
- Detaining or arresting the individual for violating any other law wherein the purpose of the detention or arrest is to prevent or retaliate for recording police activity.

Printed: 5/15/2021 (WEB)      Los Angeles County Sheriff's Department      Pg. 1/2

Manual of Policy and Procedures : 3-01/080.16 - Photography, Audio, and Videotaping by the Public and the Press

Nothing in this policy bars officers from taking appropriate action if a person taking photographs or recording video or audio is violating any provision of law. For example:

- Engaging in other actions that jeopardize the safety of the person, the officer, or others;
- Violating the law or inciting others to violate the law;
- Interfering with or obstructing police actions through direct physical intervention.

If an individual's actions are approaching the level of criminal offense, Department personnel shall recommend a less-intrusive location to the individual from which he/she may continue to observe or record. If these efforts are unsuccessful, a supervisor shall be consulted.

Verbal disagreements, criticism, insults, name calling, or obscene gestures directed at officers or others do not in themselves justify a deputy taking enforcement action toward a member of the public, including one engaged in photography or recording of video or audio. Whenever possible, de-escalation techniques should be employed. During hostile situations, deputies should evaluate the wisdom of initiating contact with a person who is taking photographs or recording video or audio, and deputies should consider whether contact may incite the person or others prior to making contact.

Nothing in this policy bars deputies from initiating consensual encounters. However, a person's refusal to answer questions or speak with a deputy during a consensual encounter does not provide a basis for a detention or search.

If a citizen's conduct related to the use of cameras or other recording devices rises to the level of necessitating an arrest for interfering or obstructing a peace officer's duties in violation of Penal Code section 148, subdivision (a) or 69, personnel shall adhere to all Department policy and procedures.

Department personnel are prohibited from tampering with, altering, deleting, or destroying any photographic, video or audio records, or equipment under any circumstances. Unless a deputy has obtained a warrant, a deputy shall not require an individual to show the photographs, video or audio records. Procedures for involuntary and voluntary seizing of video, audio, and/or pictures are located in MPP section 5-04/023.30.

Printed: 5/15/2021 (WEB)      Los Angeles County Sheriff's Department      Pg 2/2

<u>**Interference with Recording Police Activities**</u>

*Department members are prohibited from interfering with, threatening, intimidating,*

*blocking, or otherwise*

*discouraging a member of the public, who is not violating any other law, from taking*

*photographs or recording*

*video or audio (including photographs, video, or audio of police activities) in any place in*

*which the members*

*of the public is lawfully present. Such prohibited interference includes:*

*- Ordering a person to cease taking photographs or recording video or audio; however, in*

*sensitive*

CIVIL COMPLAINT

PAGE **18** OF **42**

1    *situations involving injured persons or victims, deputies may ask a person to stop recording*
2    *voluntarily,*
3    *provided the deputy explains that the person has the right to record;*

4

5    *- Demanding that person's identification;*

6

7    **Deputy White several times demanded Mr. Adjaye for identification and Mr. Adjaye**
8    **multiple times said "No" asserting his 4th and 5th Amendment rights. Mr. Adjaye told**
9    **them they're doing something "illegal" by demanding for ID**

10

11   *- Demanding that the person state a reason why he or she is taking photographs or recording*
12   *video or*
13   *audio;*

14

15   **Deputy White wanted to know why Mr. Adjaye is across the street from a women's jail**
16   **video recording. Deputy White didn't buy that Mr. Adjaye is street preacher even**
17   **though in the Civil Claim, Mr. Adjaye has did a "20 minute sermon" with his amplified**
18   **equipment (along with a brown KJV bible and a large double sided "JESUS CHRIST**
19   **SAVES" "TRUST JESUS CHRIST" sign on a large 5 foot stick leaning on the grey**
20   **wall) 15 minutes before the Deputy White interaction. The detainment was 100%**
21   **retaliatory.**

22

23

24

25   *- Detaining that person;*

26

27   **Deputy White detained (the pedestrian Detention) Mr. Adjaye on the grounds of him**
28   **video recording across the street of Lynwood Women's Regional facility.**

CIVIL COMPLAINT
PAGE __19__ OF __42__

1

2    *- Intentionally blocking or obstructing cameras or recording devices (not including physical*

3    *barricades or*

4    *screens used as part of a tactical operation or crime scene);*

5

6    *- Seizing and/or searching a cell phone, camera or recording device without a warrant;*

7

8    **Deputy White demanded to see Mr. Adjaye's video including the "20 minute sermon"**

9    **and B Roll footage of the video recordings.**

10

11    *- Using force upon that person; or*

12

13    **Deputy White gave Mr. Adjaye a lawful order to leave Mona Blvd or he'll be under**

14    **arrest.**

15

16    *- Detaining or arresting the individual for violating any other law wherein the purpose of the*

17    *detention or*

18    *arrest is to prevent or retaliate for recording police activity*

19

20    **All the claims are in the lawsuit, Deputy White's Pedestrian stop is all because Mr.**

21    **Adjaye was across the street from a women's jail with video recording equipment. He**

22    **illegal detained Mr. Adjaye because he had nothing on Mr. Adjaye (because Mr. Adjaye**

23    **didn't break the law). Deputy White said this is a lawful detention because he claims**

24    **Mr. Adjaye's professional street preacher's equipment is "Garbage" and that's the**

25    **ground for a detention where Mr. Adjaye has to identify. This was a retaliatory action**

26    **on the side of Deputy White especially when he refused to get a Supervisor in the area**

27    **to straighten this out. The other 4 Deputies were "Yes Men" under the Authority of**

28    **their Senior Deputy.**

CIVIL COMPLAINT
PAGE **20** OF **42**

*Littering explained in the California Penal Code Contra Costa County Law Library*



**31**. Deputy White holds a citation book in his hand, telling Mr. Adjaye, **"Do you want a citation, do you want a citation, I can give it to you if you hold me up"!!!**

According to **LASD Manual of Policy and Procedures 3-01 080.16 Photography, Audio, and Videotaping by the Public and the Press** Deputy White violated Mr. Adjaye's rights when he **"Detained or arresting the individual for violating any other law wherein the purpose of the detention or arrest is to prevent or retaliate for recording police activity".** Deputy White wanted to extract Mr. Adjaye's Driver's license on the basis of him video recording across the street of a woman's jail. He used Mr. Adjaye's "Professional Street preaching equipment" for the basis of the Detention. **It doesn't take a genius to figure out this was a Retaliatory Detention**

CIVIL COMPLAINT
PAGE **21** OF **42**

1

2   *That was a **Scoffing and Scorning** move (a term street preachers use to describe people who*

3   *mock the works and the rights of street preachers who are conducting activities protected*

4   *under the 1st Amendment) on the part of Deputy Jonathan White, and him being a*

5   *Corporal/Senior Deputy/Training officer, his actions paints the Los Angeles County Sheriff*

6   *Department in a bad light.*

7

8

9   **32** . After Deputy White finished running Mr. Adjaye for warrants, the other Deputies take off and

10   Deputy White gives Mr. Adjaye a lawful order to leave the area (Mona Blvd), or he'll be under arrest

11   (***California Penal Code 409 & 416***).

12

13   A violation of the ***Tom Bane Act of California*** and ***LASD Manual of Policy and Procedures 3-01***

14   ***080.16 Photography, Audio, and Videotaping by the Public and the Press***

15

16   *That was another **Scoffing and Scorning** move on the part of Deputy White because Mr. Adjaye*

17   *doesn't need Deputy White's permission to preach the word of the Heavenly Father and video record*

18   ***ON A PUBLIC SIDEWALK.***

19

20

21   **33** . Deputy White admits with his own words that he illegally detained Mr. Adjaye not for

22   littering, but because he refused to give him his name because of his video recording across the street

23   of the Lynwood women's regional jail.

24

25   A violation of the ***Tom Bane Act of California*** and ***LASD Manual of Policy and Procedures 3-01***

26   ***080.16 Photography, Audio, and Videotaping by the Public and the Press***

27

28

CIVIL COMPLAINT
PAGE **22** OF **42**

1  **34** .Around 6 PM (two hours after the incident), Mr. Adjaye calls the Century station that is also
2  adjacent to the Lynwood women's jail. He asks for the Watch Commander, the Deputy on the line
3  transfers him to a Lieutenant named "Jennifer" (Mr. Adjaye assuming her name is Lt Jennifer
4  Antuna).

5

6  **35** . Mr. Adjaye tells the Lieutenant what happened, the name of the Deputy, his business in Los
7  Angeles, and he was illegally detained preaching across the street of the Lynwood women's jail on
8  Mona Blvd. Mr. Adjaye asked the Watch Commander to investigate the incident if Deputy Jonathan
9  White violated LASD policies. The Watch Commander said she'll talk to Deputy White on Monday.

10

11 **36** . At 8:30 PM PST (after leaving Pico Rivera heading to Hollywood Blvd to do some more street
12 preaching) Mr. Adjaye the LASD Century station and he's talking to Watch Commander Lieutenant
13 Israel Renteria, he apologizes if the Deputies violated my rights. The Deputies violated the
14 California Tom Bane Act of California, Mr. Adjaye's 1st, 4th, and 5th Amendment rights. Mr.
15 Adjaye requested to submit a formal complaint but he said wait until Monday where he can talk to
16 Deputy White.

17

18 **37** . After hearing the assurance from Lt Renteria, Mr. Adjaye continued with the obligations of his
19 4 day Los Angeles/Las Vegas Christian Excursion.

20

21 **38** . On Monday morning 08 26 2019, Mr. Adjaye arrived home to Pittsburg, CA after wrapping up
22 his 4 day Christian Excursion. On the television, Assistant Sheriff Robin Limon along with head
23 LASD Homicide Bureau Captain Kent Wegener on a news conference said the sniper incident that
24 happened on Wednesday, August 21, 2019 in Lancaster, CA is a hoax and the Deputy that made up
25 the incident Angel Reinosa is no longer with LASD after today.

26

27 *There is evidence the 08 21 2019 alleged Sniper incident in Lancaster, CA was a motivating factor*
28 *to the unlawful detention because other people submitted complaints (civilian Jaime Flores*

CIVIL COMPLAINT
PAGE **23**  OF  **42**

1   *submitted lawsuit against LASD for being unlawfully detained relating to the Lancaster Station*

2   *Sniper Incident* **Jaime Flores v. Los Angeles County Sheriff's Department, et al 2:21-cv-00117)** *of*

3   *LASD Deputies unlawfully harassing civilians during manhunt for a sniper suspect.*

7   **08 26 2019 Press conference to address Lancaster, CA sniper incident 08 21 2019**



14   **39** . Mr. Adjaye submits a formal complaint Tuesday 08 27 2019 and mailed a video

15   recording copied on a DVD to the Century station showing my 20 minute sermon, the B roll

16   footage, and additional footage of his Christian Excursion

18   *(ALL OF MR. ADJAYE'S B ROLL FOOTAGE ACROSS THE STREET OF LYNWOOD*

19   *WOMEN'S JAIL, 4 minute clip of him preaching outside the LASD Star Academy in Whittier,*

20   *CA 3 hours earlier time stamped at 1:06 PM PST, a clip of Mr. Adjaye driving through a*

21   *LAPD DUI checkpoint heading to Hollywood Blvd 9 PM to do some street preaching, a clip*

22   *of Mr. Adjaye preaching outside a Spearmint Rhinos strip club Rialto, CA 2 AM in the*

23   *morning, other clips of Mr. Adjaye preaching outside other strip clubs in Las Vegas a day*

24   *later )*

CIVIL COMPLAINT
PAGE **24**  OF **42**

*DVD Menu of DVD mailed to Lt. Israel Renteria during Deputy White formal complaint*



**40**. Somewhere in late September, 2019, Lt Renteria called Mr. Adjaye back and asked him if he wanted to come down to the Century station in Lynwood, CA and have a conflict resolution with Deputy Jonathan White before the formal complaint process was completed. Mr. Adjaye rejected because he lives 329 miles away in San Francisco and feels the 20 minute sermon on the DVD 15 minutes prior of Deputy White illegally detaining Mr. Adjaye was enough.

**41**. On October 3, 2019, the complaint was concluded and they wouldn't share details of the investigation which is under the personnel bill of rights.

CIVIL COMPLAINT
PAGE **25** OF **42**

1

*Response letter to formal complaint against Jonathan White*

2

**OFFICE OF THE SHERIFF**
COUNTY OF LOS ANGELES
HALL OF JUSTICE
ALEX VILLANUEVA, SHERIFF

3

4

October 8, 2019

5

Mr. Austin Adjaye
3745 Rolling Hills Court
Pittsburg, California 04066

6

WATCH COMMANDER'S SERVICE COMMENT REPORT #231516

Dear Mr. Adjaye:

7

On August 27, 2019, you submitted a telephonic complaint to Century
Station about the circumstances regarding a pedestrian stop in the city of
Los Angeles, California. Thank you for taking time to express your concern
regarding personnel from Century Station. Your complaint was

8

documented and assigned to Century Station Lieutenant Israel Renteria for
investigation. Although California law prohibits me from discussing
specific details of peace officer personnel matters, appropriate
administrative action was taken upon the conclusion of the investigation.

9

I appreciate you bringing this matter to my attention and the opportunity it
afforded me to evaluate the conduct of our personnel. If you have any
questions about the results of our review of your complaint, please contact

10

me within 10 business days of the date of this letter at (323) 568-4780.

Sincerely,

ALEX VILLANUEVA, SHERIFF

11

12

Kerry E. Carter, Captain
Century Station

13

211 WEST TEMPLE STREET, LOS ANGELES, CALIFORNIA 90012

14

*A Tradition of Service*

15

16    **42** . On December 17, 2019, Mr. Adjaye contacted the Discovery Unit and submitted FOIA

17    on information about the August 23, 2019 unlawful detainment and asked for sensitive

18    details.

19    **43** . On March 12, 2020, Discovery Unit responded back and they're not going to share the

20    reasons why Mr. Adjaye was detained, if Dispatch was called for a "suspicious person" and

21    why Deputy White wanted to extort Mr. Adjaye with a "littering citation" in retaliation

22    because he refuses to identify. They cited Government codes to withhold information

23    (meaning a court subpoena to get a hold of most of the requests) and none of Mr. Adjaye's

24    several requests were answered.

25

26

27

28

CIVIL COMPLAINT
PAGE **26** OF **42**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### Response from LASD Discovery about the 08 23 2019 incident



**44** . On December 17, 2019, Mr. Adjaye contacted the Discovery Unit and submitted FOIA on information about the August 23, 2019 unlawful detainment and asked for sensitive details. On March 12, 2020, Discovery Unit responded back and they're not going to share the reasons why Mr. Adjaye was detained, if Dispatch was called for a "suspicious person" and why Deputy White wanted to extort me with a "littering citation" because he refused to identify. They cited Government codes to withhold information (meaning I need a court subpoena to get a hold of most of my request) and none of my several requests were answered.

**45** . On March 31, 2020, Mr. Adjaye's civil claim against the County of Los Angeles was denied and he went forward on the process of the lawsuit

CIVIL COMPLAINT

PAGE **27** OF **42**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CIVIL COMPLAINT
PAGE __28__ OF __42__

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CLAIMS**

**First Claim**

(*Name the law or right violated*: **Violation Of Fourth Amendment Right – Unreasonable Seizure of Person and Search of Property, retaliatory detention, extortion, and harassment**

(*Name the defendants who violated it*: Deputy Jonathan White, 4 unnamed Deputies, Los Angeles County Sheriff Department

[*Explain briefly here <u>what</u> the law is, <u>what each</u> defendant did to violate it, and <u>how</u> you were harmed.  You do not need to make legal arguments. You can refer back to your statement of facts.*]

**46**. Plaintiff incorporates each of the preceding paragraphs as if set forth fully below.

**47**. In detaining and searching Plaintiff, Defendant acted intentionally.

**48**. Defendant detained Plaintiff without reasonable suspicion and without a warrant.

**49**. Defendant seized Plaintiff's ID without reasonable suspicion and without a warrant.

**50**. Defendant admits he illegally detained Plaintiff without reasonable suspicion or probable cause during the end of the detainment because he wanted to identify him

**51**. Defendant gives Plaintiff lawful order to leave the area or he'll under arrest during the end of the interaction.

**52**. Deputy White at no time explained why he stopped Mr. Adjaye only asking him why he's on the sidewalk with video recording equipment across the street of the Lynwood women's jail. Nonetheless, Mr. Adjaye told him along with the other 4 Deputies under his Supervisor authority as a two striped Deputy that he was in the area to preach and take B roll footage.

**53**. In detaining and seizing Plaintiff's ID,  Defendants were acting or purporting to act in the performance of their official duties.

CIVIL COMPLAINT

PAGE **29**  OF **42**

**54** . Defendant violated several policies in the *LASD Manual of Policy and Procedures 3-01 080.16 Photography, Audio, and Videotaping by the Public and the Press*

**55** . Defendant violated policies in the *LASD Manual_of_Policy_and_Procedures___5-09_520.15_-_Consensual_Encounters*

**56** . When Jonathan White and the other Deputies detained Mr. Adjaye for street preaching. protesting, and video recording, they acknowledge that he knew the laws and he asserted his 4th and 5th Amendment rights in this consensual encounter. Mr. Adjaye answered every question to dispel Senior Deputy Jonathan White's suspicions, but Deputy White thought Mr. Adjaye had ulterior motives because he refused to give him his name and identification on the grounds of 148.G of the California penal code.

**57** . Deputy White detains Mr. Adjaye on the grounds of "littering" and claims his street preaching equipment is "garbage" that gave Deputy White authority probable cause to detain Mr. Adjaye.

**58** . Mr. Adjaye demanded for a Supervisor 4 times to come to the scene because he warned Deputy White and the 4 other Deputies they're doing something illegal (retaliatory search) detaining Mr. Adjaye without probable cause only on the basis that Mr. Adjaye was across the street from a women's prison on Mona Blvd between E117 and E Imperial near the Glenn Anderson 105 freeway with video recording equipment and professional street preaching equipment for about an hour.

**59** . Deputy White multiple times refused to honor Mr. Adjaye's request for a Supervisor to arrive at the scene to investigate this encounter

CIVIL COMPLAINT
PAGE **30** OF **42**

1

2

3

**Second Claim**

(*Name the law or right violated*: **Violation Of First Amendment Right – Freedom of Speech, Freedom of Expression, Retaliatory Detention, Retaliatory seizure of property, the right to video record on a public sidewalk (Fordyce vs. Seattle 1993), the right to street preach on a public sidewalk, the right to protest on a public sidewalk, religious persecution**

(*Name the defendants who violated it*: Jonathan White, 4 other Deputies assisting White, Los Angeles County Sheriff Department

    **60**  . Plaintiff incorporates each of the preceding paragraphs as if set forth fully below.

    **61**  . Observing and recording public police activities, without interfering with those duties, is a legitimate means of gathering information for public dissemination and is therefore expressive conduct protected by the First Amendment to the United States Constitution.

    **62**  . The detention and the seizure of Plaintiff and his property constituted unlawful retaliation by Defendants for Plaintiff's engaging in activity protected by the First Amendment to the U.S. Constitution.

    **63**  . In detaining and seizing property of the Plaintiff, Defendants acted intentionally.

    **64**  . Defendants detained Plaintiff without reasonable suspicion and without a warrant.

    **65**  . Prior to detaining Plaintiff without reasonable suspicion Plaintiff engaged in protected speech by videotaping police activity while playing religious and music audio (B roll footage).

    **66**  . Defendants' conduct of detaining and seizing Plaintiff's ID after he engaged in the above protected activity would chill a person of ordinary firmness from engaging in protected activity.

CIVIL COMPLAINT
PAGE **31** OF **42**

**67**  . Plaintiff's protected activity was a substantial or motivating factor in the Defendants' improper detention of Plaintiff.

**68**  . Defendants were acting or purporting to act in the performance of their official duties.

**69** . Defendant violated several policies in the *LASD Manual of Policy and Procedures 3-01 080.16 Photography, Audio, and Videotaping by the Public and the Press*

**70** . Defendant violated policies in the *LASD Manual_of_Policy_and_Procedures___5-09_520.15_-_Consensual_Encounters*

**71**  . When Deputy White interrogated Mr. Adjaye on the public sidewalk, Mr. Adjaye told Deputy White he's being harassed for street preaching, protesting, and video recording anything he can see on a public sidewalk. 148. G of the California Penal code says a person can record "ANY PUBLIC OFFICIAL" in the full capacity of their duties in public without being harassed. RECORD BY ITSELF ISN'T A CRIME OR A REASON FOR A LAWFUL DETAINMENT (search and seizure).

**72**  . When Mr. Adjaye dispelled Deputy White's suspicions after answering his questions and asserting his 4th and 5th Amendment rights at the same time, it should have ended there.

**73**  . Mr. Adjaye didn't violate any laws, he wasn't belligerent, he wasn't harassing civilians, he wasn't stepping into traffic or doing anything that jeopardizes public safety. He wasn't hiding into bushes, he wasn't concealing his actions. Sheriff security guards, Deputy Sheriff's, and civilian employees/guest visibly saw Mr. Adjaye with street preaching equipment

**74**  . Deputy White was 100% aware of his actions

CIVIL COMPLAINT
PAGE **32**  OF **42**

**Third Claim**

(*Name the law or right violated*: **VIOLATION OF Cal. Civ. Code § 52.1 – TOM BANE ACT**

(*Name the defendants who violated it*: Deputy Jonathan White, Los Angeles County Sheriff Department, County of Los Angeles

## The Bane Act: Civil Code Section 52.1

*The Bane Act provides protection from threats, intimidation, or coercion and for attempts to interfere with someone's state or federal statutory or constitutional rights.*
*The rights include the right to association, assembly, due process, education, employment, equal protection, expression, formation, and enforcement of contracts, holding of public office, housing, privacy, speech, travel, use of public facilities, voting, worship, and protection from bodily restraint or harm, from personal insult, from defamation, and from injury to personal relations. Proof of "hate motivation" is required.*
*The Bane Act provides for:*
- *Civil penalties for perpetrators*
- *Civil remedies to victims of "hate crime violence"*
- *Three times actual damages, but no less than $1,000*
- *Restraining orders and injunctive, or other equitable relief (violation of which is punishable by a criminal contempt action, with a penalty of six months in jail and/or a fine not exceeding $1,000)*
- *Attorney's fees*

 **75** . Defendants, acting within the scope of their duties as Los Angeles County Sheriff Deputies did unlawfully detain Mr. Adjaye in an attempt to interfere with the exercise of his First Amendment free speech rights, and Fourth Amendment right to be free

CIVIL COMPLAINT
PAGE **33** OF **42**

from unreasonable seizure.

**76**  . Defendant's Jonathan White, Los Angeles Sheriff Department, and County of Los Angeles is liable for the acts, omissions and conduct of their employees, including the Officer Defendants herein, whose conduct was the cause of Mr. Adjaye's deprivation of rights.

**77**  . Mr. Adjaye filed a timely claim pursuant to Cal. Govt. Code § 910, et seq. As that claim has been rejected in the past six months, this action is timely.

**78**  . The conduct of the Defendants constituted interference by threats, intimidations, or coercion, or attempted interference with the exercise or enjoyment by Mr. Adjaye to rights that are secured by the Constitution and law of the United States, or by the Constitution and laws of the State of California, including the right to be free from unreasonable seizure, and the right to exercise free speech.

**79**   . As a direct and proximate result of the acts described above, the Plaintiff's rights pursuant to Cal. Civ. Code § 52.1 were violated causing Mr. Adjaye to have suffered grievously enduring: 1) the loss of his liberty and freedom, 2) mental and emotional injury, distress, pain and suffering, 3)  any other special and general damages and expenses, in an amount to be proven at trial.

**80**   . The actions by said defendants were committed maliciously, oppressively and in reckless disregard of plaintiff's constitutional rights, sufficient for an award of punitive / exemplary damages against all defendants and each of them, in an amount to be proven at trial.

**81**  . Mr. Adjaye should be free from threats, intimidation, harassment, and coercion from public officials in the full capacity of their duties and under the color of law.

CIVIL COMPLAINT
PAGE **34**  OF  **42**

**82**  . Mr. Adjaye should be free from retaliatory detainments, seizure of property, extortions of any kind from public officials in the full capacity of their duties and under the color of law.

**83** . Defendant violated several policies in the *LASD Manual of Policy and Procedures 3-01 080.16 Photography, Audio, and Videotaping by the Public and the Press*

**84** . Defendant violated policies in the *LASD Manual_of_Policy_and_Procedures___5-09_520.15_-_Consensual_Encounters*

**85**  . When Deputy White illegally detained Mr. Adjaye for "littering" (false detainment) as a retaliatory detention because he refused identify asserting his 4th and 5th Amendment rights, he violated the Bane Act, when he refused a Supervisor to come to the scene, he violated the Bane Act, when he had a yellow citation book in head threatening to give Mr. Adjaye a citation for demanding a Supervisor at the scene, he violated the Bane Act, when Deputy White verbally told Mr. Adjaye that he didn't detain him for "littering" when he gave me a lawful order to leave Mona Blvd (a public sidewalk) or he'll be under arrest, he violated the Bane Act..

CIVIL COMPLAINT
PAGE **35** OF **42**

1

2

**Deputy White's incident with First Amendment Auditors/Copwatchers May 23rd 2021 on the LASD Sheriff Academy campus parking lot area N Eastern Ave Los Angeles, CA**

3

4

5

6

7

8

9



10   Deputy Jhonattan White along with several LASD Deputies assigned to the East Los Angeles Sheriff

11   Department detain First Amendment Auditors (YouTubers) San Joaquin Transparency/David Flores,

12   East Los Audits, Nate Skates 182, Jays Surreal Audits, and San Joaquin Audits. Deputy Jhonattan

13   White was dressed in semi tactical clothing while the Deputies from the East Los Angeles station

14   were in regular uniform. They detain the First Amendment Auditors on the basis of video recording

15   around the Sheriff Academy campus and wanting to identify them. Deputy White along with the

16   several other Deputies wanted to Trespass the cameramen on the basis of recording. Deputy White

17   told the cameramen this is Private Property and they have to leave the campus. David Flores on

18   video telling Deputy White the Sheriff Academy is property accessible to the public and a detention

19   for recording or taking a tour on the property is unlawful. They're several videos of the 30 minute

20   encounter with Deputy White and the several other Deputies from the East Los Angeles station.

21   Deputy White told the 1st Amendment Auditors that he didn't know what they were doing on the

22   large campus and someone claimed they were in restricted areas of the Academy. Several videos on

23   YouTube show the Auditors in the parking lot and Memorial.

24

25

26

27   Mr. Adjaye saw the videos and submitted a formal complaint against Deputy White, not the other

28   Deputies in the video assigned to East Los Angeles station. The Sergeant filling out the formal

CIVIL COMPLAINT
PAGE **36** OF **42**

1 | complaint asked Mr. Adjaye a series of questions because Mr. Adjaye admitted he's in an active

2 | lawsuit against Deputy White and saw the videos on YouTube and wasn't there during that May 23,

3 | 2021 encounter.

4 |

5 | Weeks later, a Supervisor from the Tactical unit contacts Mr. Adjaye and tells him he reviewed the

6 | May 23, 2021 and Mr. Adjaye will receive a complaint receipt within 30 days.

7 |

8 |

9 |

10 | There is a pattern LASD isn't enforcing the rules about Deputies unlawfully detaining civilians for

11 | video recording in Public even when in the policies, it says *"Deputies should assume they're being*

12 | *recorded 24/7"*

13 | *Sgt from Tactical Unit mails letter to Mr. Adjaye relating to formal complaint submitted about the*
*May 23rd, 2021 incident involving 5 cameramen being detained by Deputy White and*

14 | *several East Los Angeles Deputies on LASD Academy campus for video recording*

15 | **OFFICE OF THE SHERIFF**

COUNTY OF LOS ANGELES
HALL OF JUSTICE

16 | June 22, 2021    ALEX VILLANUEVA, Sheriff

17 | Mr. Austin Richard Adjaye
3745 Rolling Hills Court
Pittsburg, California 94565

18 | Dear Mr. Adjaye:

19 | I have received your complaint alleging inappropriate conduct by personnel
assigned to Special Enforcement Bureau. Your complaint was documented
and assigned to Lieutenant Joseph Garrido for investigation. The results of
the review will be conveyed to you upon its completion.

20 | Thank you for taking the time to express your concern regarding personnel
from the Los Angeles County Sheriff's Department, Special Enforcement
Bureau.

21 | I appreciate you bringing this matter to my attention and the opportunity it
afforded me to evaluate the conduct of our personnel. If you should have any
questions, please contact Lieutenant Garrido of my staff, at (323) 881-7800.

Sincerely,

22 | ALEX VILLANUEVA, SHERIFF

23 | Thomas A. Giandomenico, Captain
Special Enforcement Bureau

24 |

25 |

26 | 211 West Temple Street, Los Angeles, California 90012

27 | *A Tradition of Service*
— Since 1850 —

28 |

CIVIL COMPLAINT
PAGE __37_ OF __42__

1

2

### Conclusion

3

4   The Los Angeles County Sheriff Department is going to have a very difficult time defending the

5   actions of Deputy Jhonattan White in court when there is evidence he violated LASD policies (not

just 148.G of the California Penal Code or the Tom Bane Act of California).

6

7    **THE FACT THAT MR. ADJAYE WAS STANDING ACROSS THE STREET OF THE**

8   **LYNWOOD WOMEN'S JAIL FOR AN HOUR DOESN'T ESTABLISH GROUNDS FOR A**

9   **TERRY STOP. DEPUTY WHITE HAD NO REASONABLE GROUNDS FOR SUSPICION**

10  **TO IDENTIFY MR. ADJAYE. A PERSON WITH PROFESSIONAL STREET PREACHING**

11  **EQUIPMENT DOESN'T ESTABLISH GROUNDS FOR A DETENTION.**

12

13  Deputy White clearly violated several policies in the ***LASD Manual of Policy and Procedures 3-01***

14  ***080.16 Photography, Audio, and Videotaping by the Public and the Press*** especially:

15

16

17      *- Detaining or arresting the individual for violating any other law wherein the purpose of*
        *the detention or*

18      *arrest is to prevent or retaliate for recording police activity*

19

20

21

22  Mr. Adjaye sought outpatient therapy in the Eastbay (Northern California) from 09 03 2019 - present

23  because the August 23,2019 unlawful detainment/extortion/illegal seizure/harassment for protesting,

video recording, and street preaching. Mr. Adjaye had business assignments where he bought luxury

24  goods in Southern California along with used automobiles to be shipped overseas to a West African

25  Country part of his father's Import/Export LLC. Between September 2019 - January 2020, Mr.

26  Adjaye lost a $3000 - $4000 profit because he couldn't make the trips to Los Angeles because of the

27  PTSD, emotional distress of the incident, and his outpatient therapy obligations related to the 08 23

28

CIVIL COMPLAINT
PAGE  **38**  OF  **42**

2019 incident. Mr. Adjaye believes the County of Los Angeles is 100% responsible for Deputy Jonathan White's tactics of him being unlawfully detained, race/racial profiling played a role in Mr. Adjaye's detainment along with religion, and it was intentional on Deputy White's part to extort Mr. Adjaye because he refuse to ID under 148.G of the California penal code. Mr. Adjaye feels his interaction with Deputy White was a portion of the unethical tactics LASD utilize because he thought Mr. Adjaye had ulterior motives and connections with this alleged sniper person (the Angel Reinosa alleged sniper incident Wednesday August 21, 2019 Lancaster, CA that was proven a hoax on Monday, August 26, 2019).

Mr. Adjaye believes the Deputy White incident was a retaliatory stop, an illegal stop (Deputy White probably claims it's a pretext stop, but there is no paperwork available, **NO DISCOVERY DISCLOSED** to Mr. Adjaye (LASD Discovery Unit) , and his Supervisors Lt. Renteria and Lt. Antuna aren't allowed to disclose personnel matters). It shows you Deputy White is a bad supervisor/training officer/Corporal, and Mr. Adjaye doesn't believe that another police officer in the state of California (any other police agency) who's California POST certified that operates under California law and the US Constitution would of acted the same way Deputy White did in the Capacity (or rank) of a Senior officer/training officer/Corporal unless he or she is a **"Scoffer and a Scorner"** and has no respect for the law and US Constitution.

## DEMAND FOR RELIEF

[*State what you want the Court to do.  Depending on your claims, you may ask the Court to award you money or order the defendant to do something or stop doing something.  If you are asking for money, you can say how much you are asking for and why you should get that amount, or describe the different kinds of harm caused by the defendant.*]

**86**  . WHEREFORE, I **Austin Richard Adjaye** respectfully requests that this court enter judgment against

**Defendants as follows:**

**A**. Issue a judgment declaring that the acts of the Defendants described herein Violated

CIVIL COMPLAINT
PAGE **39**  OF **42**

1    my Constitutional Rights;

2    **B**. For an award of compensatory damages in favor of plaintiff an amount to be shown at

3    trial against all defendants;

4    **C**. For an award of punitive / exemplary damages in an amount to be shown at trial against

5    all defendants;

6    **D.** Cost of suit

7    **E**. Reasonable legal fees

8    **F**. Such other relief as this Honorable Court may deem just and appropriate

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CIVIL COMPLAINT
PAGE **40** OF **42**

1

## DEMAND FOR JURY TRIAL

2    [*Check this box if you want your case to be decided by a jury, instead of a judge, if allowed.*]

3         ☒  Plaintiff demands a jury trial on all issues.

4

5

6                                Respectfully submitted,

7

8    Date:    07 14 2021              Sign Name:    *Austin Adjaye*

9                                     Print Name:   Austin Richard Adjaye

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CIVIL COMPLAINT
PAGE  **41**  OF  **42**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

CIVIL COMPLAINT
PAGE __42__ OF __42__